**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

**SHERI REDEKER-BARRY,**

       **Petitioner,**

**-vs-**                **Case No. 2:07-cv-372-FtM-34DNF**

**UNITED STATES OF AMERICA,**
**AMSOUTH BANK, and SUSAN STONIER,**

       **Respondents.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

  The Petitioner, Sheri Redeker-Barry ("Barry") filed a Petition to Quash Summons (Doc. 1) on May 23, 2005. Ms. Barry is requesting that the summons issued by the Internal Revenue Service ("IRS") to AmSouth Bank be quashed. Ms Barry claims that the IRS is attempting to use the summons for the improper purpose of gathering evidence for a criminal investigation.

  **I. Background**

  This case has a long history. This case was originally filed as a miscellaneous case, and was assigned to the Honorable Sheri Polster Chappell, United States Magistrate Judge, and the Honorable John E. Steele, United States District Judge. On May 24, 2005, Judge Chappell entered an Endorsed Order denying the Petition to Quash IRS Summons. (Doc. 1). Ms. Barry filed a Motion for New Trial or to Alter Judgment (Doc. 3) which was denied by Judge Chappell. (See, Order, Doc. 4). Ms. Barry filed a Second Motion for Reconsideration (Doc. 5) which was denied by Judge Chappell. (See, Order Doc. 12). Ms. Barry tried to appeal these decisions to the Eleventh Circuit, but the Eleventh Circuit

in an Order dated August 9, 2005, dismissed the appeals *sua sponte* for lack of jurisdiction stating that a magistrate judge's order is not final and appealable. (See, Doc. 9). On April 11, 2006, Ms. Barry filed a Motion to Request a De Novo Determination of the Order Denying Her Petition to Quash Summons (Doc. 18). Judge Steele entered an Opinion and Order (Doc. 22) on May 30, 2006 denying the Motion to Request a De Novo Determination arguing that AmSouth had already provided the documents pursuant to the summons and therefore, there was no issue in controversy. Ms. Barry filed a Notice of Appeal (Doc. 25) on July 10, 2006. The Court of Appeals disagreed with the District Court and remanded the case back to the District Court. (See, Doc. 27). The Court of Appeals found that the District Court could have provided a partial remedy by ordering the IRS to destroy or return all copies of the documents to AmSouth. The Eleventh Circuit also states that "we have held that, where the legality of an IRS summons is at issue, a taxpayer has a minimal right to discovery which can be fulfilled through an evidentiary hearing at the district court," citing *United States v. Harris*, 628 F.2d 875, 881 (5th Cir. 1980). (See, Doc. 27, p. 2).

When the Clerk's Office received the remand, the Clerk reassigned the case to the civil docket and the case was assigned to this Court and to the Honorable Marcia Morales Howard, United States District Judge. This Court entered an Order (Doc. 38) on July 17, 2007, allowing the parties four (4) months to conduct discovery and set an evidentiary hearing for December 10, 2007.

Ms. Barry also sued IRS Agent Susan Stonier, and AmSouth Bank. Ms. Barry agreed to dismiss Susan Stonier from the case, and Judge Howard entered an Order (Doc. 46) dismissing her. AmSouth Bank was served eventually and filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 48). A Report and Recommendation (Doc. 54) was entered on November 8, 2007, recommending that the Motion to Dismiss be granted based upon the Court lacking subject matter jurisdiction as there was

no case and controversy as to AmSouth Bank based upon AmSouth complying with the subpoena and providing the documents. This Court also found that Ms. Redeker-Barry failed to state a cause of action against AmSouth. The Report and Recommendation remains pending. On November 19, 2007, the United States filed a Motion for Summary Judgment (Doc. 57) and Ms. Barry filed her Opposition (Doc. 63) on December 6, 2007.

## II. Evidentiary Hearing

On December 10, 2007, the Court held an evidentiary hearing allowing the parties to submit evidence. Ms. Barry presented the testimony of Susan Stonier, Revenue Agent with the IRS; Michael Townsend; and Ms. Barry testified on her own behalf.

### A. Testimony of Revenue Agent Stonier

Ms. Stonier testified that her duties as a Revenue Agent include examining taxpayers whether individuals, partnerships or corporations. (Tr. p. 13[1]). Part of her duties include issuing administrative summons, however, Ms. Stonier did not know from where her authority derives. (Tr. p. 14). She was assigned Ms. Barry's file by Ms. Stonier's manager. (Tr. p. 15). Ms. Stonier was assigned to examine tax years 2000, 2001, 2002, and 2003 originally, and eventually the tax year 2004 as well. (Tr. p. 40). She had access to the IRS records for those years. (Tr. p. 40). When she began her investigation, there was no criminal referral or criminal investigation indicated in Ms. Barry's IRS records. (Tr. p. 41). If a criminal investigation was being conducted on Ms. Barry by the IRS, then there would have

---

[1] "Tr." refers to the Transcript (Doc. 69) of the evidentiary hearing held on December 10, 2007.

been a freeze on her accounts, and there was no freeze at the outset of Ms. Stonier's investigation. (Tr. p. 41).

Ms. Barry questioned Ms. Stonier extensively on her Examining Officer's Activity Record (Gov. Exh. 1, and attached to the Motion for Summary Judgment, Doc. 57). Ms. Stonier did not recall from the meeting on September 29, 2004 with RO Lewis, if Ms. Lewis told her that Ms. Barry had not filed 1040 forms for the past fifteen (15) years. (Tr. p. 16). Ms. Stonier testified that she investigated Ms. Barry's husband and children to determine any income leads. (Tr. p. 18, 19). Ms. Stonier stated that she investigated Lauren Redeker, the daughter of Ms. Barry and stated in her Activity Record that "[i]f these properties are clearly not Lauren Redeker's, this is a true badge." (Gov. Exh. 1, 6/20/05 entry, Tr. p. 34). Meaning that if the properties were not truly owned by Lauren Redeker but were actually owned by Ms. Barry, then this is an indication of fraud. (Tr. p. 34). Ms. Stonier testified that she thought that Ms. Barry had income from sources other than those listed on her 1099 forms because of property being listed in her children's names. (Tr. p. 39).

Ms. Stonier stated that she had 1009 forms for Ms. Barry, but prior to issuing the summons to AmSouth, she had no information from AmSouth Bank regarding Ms. Barry. (Tr. p. 29, 44). Ms. Stonier testified that she sent a broadly worded summons to AmSouth Bank which is the typical summons that she sends out when she is attempting to determine all sources of incomes. (Tr. p. 29-30, 43). She did notify Ms. Barry that she sent a summons to AmSouth Bank.(Tr. p. 43). Ms. Stonier received the documents from AmSouth Bank but was uncertain as to whether she could review them based on the orders entered in this case. (Gov. Exh. 1, 6/15/05). She went to the courthouse and obtained a copy of the Order denying the Motion to Quash and faxed it to District Counsel for the IRS.

(Gov. Exh. 1, 6/17/05). Counsel for the IRS sent a fax indicating that Ms. Stonier was permitted to review the information provided by AmSouth Bank. (Gov. Exh. 1, 6/20/05).

Ms. Stonier also testified that she was attempting to determine if Ms. Barry had any expenses which would offset her income. (Tr. p. 45). She had received the 1099 forms with the income from the realty companies, and knew that due to the nature of the real estate business, there would be expenses associated with the income. (Tr. p. 45). Ms. Stonier told Ms. Barry that there was a benefit in itemizing her deductions.

Ms. Stonier testified that she went to her manager in 2006, through the IRS fraud coordinator to make a criminal referral for Ms. Barry. (Tr. p. 41). The fraud coordinator contacts the Criminal Investigation Division ("CID"). (Tr. p. 41). An examining officer never makes a direct referral to the Justice Department. (Tr. p. 41). After a referral is made to the CID, the CID would accept or deny the referral. (Tr. p. 42). If the referral is accepted, the CID develops its case. (Tr. p. 42). If there is sufficient evidence, the CID then refers the case to the U.S. Attorney's Office who will then decide whether to take the case before a grand jury. (Tr. p. 42).

### B. Testimony of Michael Townsend

Mr. Townsend was an observer at the meeting held on January 13, 2005 between Ms. Stonier and Ms. Barry.(Tr. p. 47). Mr. Townsend was the manager of realty company where Ms. Barry worked. (Tr. p. 53). He recalls that Ms. Barry wanted to have the standard deductions taken on her income taxes. She did not want to itemize any deductions. (Tr. p. 48). Mr. Townsend testified that Ms. Barry did not want the IRS to file any returns for her. (Tr. p. 52).

### C. Testimony of Sheri Redeker-Barry

Ms. Barry testified that in 2002, she attended a hearing with the IRS and spoke to Ladd Brown who is an attorney with the IRS. (Tr. p. 56). She had made a payment to the IRS for back taxes and was asking Mr. Brown to look into the payment. (Tr. p. 57). Mr. Brown told her that her check was forwarded to the CID in California.(Tr. p. 57).

Ms. Barry testified that she believes that due to her not filing tax returns for so many years, any investigation by the IRS would be a criminal investigation. (Tr. p. 58). Ms. Barry is not convinced that Ms. Stonier issued the Summons to AmSouth Bank to aid Ms. Stonier in completing 1040 forms. (Tr. p. 58). Rather, Ms. Barry contends that Ms. Stonier issued the summons to AmSouth Bank to investigate Ms. Barry's violations of the law, which according to Ms. Barry, causes the summons to be issued in bad faith. (Tr. p. 58-59). Ms. Barry claims that Ms. Stonier must have had a reasonable suspicion that Ms. Barry was violating revenue laws. (Tr. p. 59).

In March 2006, Ms. Barry met with Beth Watts, who Ms. Barry believed was a Special Agent with CID. (Tr. p. 59). Ms. Watts went to Ms. Barry's residence and to her business and asked questions. (Tr. p. 59). A few months later, Ms. Watts returned giving Ms. Barry a letter which was an "invitation" to testify before a grand jury. (Tr. p. 59). Ms. Barry declined the invitation. (Tr. p. 60).

Ms. Barry also testified that five (5) additional criminal summons were issued at the end of March 2006 by Ms. Watts. (Tr. p. 64). In a separate case, Ms. Barry filed a Petition to Quash those summonses, and the IRS withdrew these summons. (Tr. p. 67-68).

### III. Motion for Summary Judgment[2]

In the Motion for Summary Judgment, the United States asserts that Ms. Stonier was assigned to determine Ms. Barry's tax liability for the years 2000, 2001, 2002, 2003 and 2004. Ms. Stonier issued a summons requiring Ms. Barry to appear. Ms. Barry appeared, but refused to file federal income tax returns, refused to provide any records or information, and refused to sign an examination report if it was prepared. Ms. Stonier tried to get information from Ms. Barry's prior employers, VIP Realty, Denny Grimes, and Coldwell Banker. In April 2005, Ms. Stonier wrote a letter to Ms. Barry stating that Ms. Stonier was going to contact AmSouth Bank regarding this investigation to obtain bank records for the period of January 1, 2000 through December 31, 2004. The United States claims that when the summons was issued, there was no criminal investigation being conducted. Ms. Barry filed her Petition to Quash Summons. AmSouth Bank would not comply with the summons based on the pending Petition to Quash Summons. After Judge Chappell entered her Endorsed Order denying the Petition to Quash Summons, AmSouth Bank provided the documents to the IRS. Ms. Stonier did review the documents after she confirmed that the Petition to Quash IRS Summons was denied. In October 2005, Stonier received additional documents from AmSouth in response to the summons. She reviewed those documents as well. On January 17, 2006, Ms. Stonier referred Ms. Barry case to the Criminal Investigation Division of the IRS. Ms. Stonier has no knowledge if a referral was made from the Criminal Investigation Division to the Department of Justice for prosecution.

---

[2] The Court determines that a motion for summary judgment may not be the appropriate vehicle for the Court to determine the issues in this case. Pursuant to Fed.R.Civ.P. 56(c), for a motion for summary judgment to be granted, no material facts must be at issue. In the instant case, an evidentiary hearing was held to determine the material facts at issue. Therefore, the Court converted the motion for summary judgment to a motion for judgment on the record.

Ms. Barry filed her Opposition to the Motion for Summary Judgment on December 7, 2007. She claims that in May 2005, 2 CID agents appeared at her home and office in Fort Myers. She was "invited" to appear before a grand jury to testify because she and her family were subject to a Title 18 Criminal Investigation for the tax years 1997-2004. She has heard nothing else. She attached a Summons by the CID to Bank of America for the tax years 2000 through 2005 that was issued on March 22, 2006.

**A. Analysis**

Pursuant to 26 U.S.C. §7609(b)(2), a taxpayer may petition the Court to quash a summons within 20 days after service. The United States argues that the IRS can issue administrative summons for records to determine the appropriate amount of income tax liability. These summons can be issued to third parties. The IRS's authority to investigate is broad and expansive. *La Mura v. United States*, 765 F.2d 974, 979 (11th Cir. 1985). However, its power is not limitless. *Id*.

> To obtain enforcement of a summons, the IRS must demonstrate (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS' possession and, (4) that it has taken the administrative steps necessary to the issuance of a summons.

*Id*. (citing *United States v. Powell*, 379 U.S. 48, 57-59 (1964), other citations omitted). The IRS can satisfy its burden by producing a sworn affidavit of the revenue agent who issued the summons. *Id*. (citations omitted). Thereafter the burden shifts to the party contesting the summons to disprove one of the four elements of the government's *prima facie* case showing that an enforcement of the summons would abuse the court's process. *Id*. at 979-980.

The IRS provided the sworn statement of Ms. Stonier. (See, Gov. Exh. 1). During her testimony as well as in her affidavit, Ms. Stonier stated that the purpose of her investigation was to determine the income tax due from Ms. Barry for the years 2000, 2001, 2001, 2003, and 2004. (See, p. 1, Declaration by Susan Stonier, Gov. Exh. 1). Ms. Stonier issued an administrative summons to AmSouth Bank in furtherance of her investigation into Ms. Barry's taxable income for the years 2000, 2001, 2002, 2003, and 2004. Ms. Stonier testified that the information she sought from AmSouth Bank was not in her possession. Ms. Stonier testified that she took the proper administrative steps in the issuance of the summons. She also sent a notice to Ms. Barry that a summons to AmSouth Bank was issued. The United States has met its *prima facie* burden. The burden then shifts to Ms. Barry to disprove one of these four elements.

Ms. Barry argues that the IRS abandoned its civil tax collection case and made an institutional commitment to make a referral to the Department of Justice for a criminal prosecution. She concludes therefore, that the administrative summons to AmSouth Bank was issued in bad faith. "Prior to 1982, the IRS could not issue a summons solely to gather information for a criminal prosecution against the taxpayer." *Id.* at ftnt. 9, (citing *United States v. LaSalle National Bank*, 437 U.S. 298 (1978)). In 1982, Congress amended the tax code to "provide a clear definition of when a tax investigation has become solely criminal in nature," which is found in 26 U.S.C. §7602. It provides that the IRS may not issue an administrative summons if "there is Justice Department referral." 26 U.S.C. §7602(d).

26 U.S.C. §7602(d) provides as follows:

**(d) No administrative summons when there is Justice Department referral. –**

**(1) Limitation of authority. –** No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

**(2) Justice Department referral in effect.** –   For purposes of this subsection –
   **(A) In general.** –   A Justice Department referral is in effect with respect to any person if –
   **(i)** the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or
   **(ii)** any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

Ms. Barry argues that Ms. Stonier was investigating fraud which is a criminal investigation when she sent the Summons to AmSouth Bank. Ms. Barry asserts that if Ms. Stonier was simply trying to discover information regarding Ms. Barry's income, then she had the 1099 forms and had no need to investigate further. Ms. Barry only requested that standard deductions be used to offset any income and therefore, no investigation was needed as to deductions.

As a Revenue Agent, Ms. Stonier has broad authority to investigate. Ms. Stonier testified that she needed to investigate into the transfer of property and the ownership of property in Ms. Barry's children's names to determine if there was any income associated with these transactions. Ms. Stonier also wanted to review bank account information to check into any other sources of income. Ms. Stonier testified that at the time she issued the Summons to AmSouth Bank there was no criminal referral based upon there being no freeze on Ms. Barry's IRS accounts when Ms. Stonier viewed them. The Court determines that Ms. Stonier was not investigating Ms. Barry's AmSouth Bank accounts in bad faith and Ms. Stonier was within her authority to issue a Summons to AmSouth Bank to investigate Ms. Barry's other sources of income.

Ms. Barry testified that in 2002, she was subject to a criminal investigation. She claims that she spoke with Ladd Brown, an attorney with the IRS, and that her payment was referred to the CID in California. Ms. Barry did not provide any documentary evidence in support of her contentions

regarding this incident. The United States asserts that it was not aware of any CID investigation of Ms. Barry in 2002, however, it argues that any possible CID referral would be for tax years other than 2000 through 2004. Pursuant to 26 U.S.C. §7602(d)(3), "[f]or purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately." Ms. Barry has not met her burden of producing any evidence that the years 2000 through 2004 were included in this alleged prior CID referral in 2002, nor has she shown that her case was recommended to the Attorney General for a grand jury investigation prior to the date the Summons to AmSouth Bank was issued or that a request was made under Section 6103(h)(3)(B) for the disclosure of her return.

### III. Conclusion

The Court respectfully recommends that the Motion for Summary Judgment (Doc. 57) which is converted to a Motion for Judgment on the Record be **GRANTED** and the Petition to Quash Summons (Doc. 1) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __18th__ day of January, 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record